### GIBBINS et ux. v. CAMPBELL et al.

(Supreme Court, General Term, Second Department. December 12, 1892.)

ANSWER—FAILURE TO SERVE—GRANTING LEAVE AFTER TRIAL.

> Plaintiff conveyed to his wife land given him by his father, but on the latter's objection he and his wife conveyed to his sister, who reconveyed to him on his executing a bond and mortgage on the property. This mortgage was executed without consideration, at the father's request, to protect plaintiff from debts, and the father's will directed its cancellation. In an action to set aside the mortgage, after the court directed judgment for plaintiff, a defendant, who had not before answered, moved to be allowed to answer, claiming to own the mortgage as the father's executor. He made affidavit that the mortgage was held by plaintiff's sister in trust for the father, that he had interposed no answer because he could not prove the trust, and alleged his ignorance of various material circumstances till the trial,—to which the son filed a counter affidavit denying these allegations. *Held,* that an order denying the executor's motion was proper.

Appeal from special term, Kings county.

Action by Austin P. Gibbins and Veronica P. Gibbins, his wife, against James P. Campbell, James L. Lowry, as sole acting executor of Austin Gibbins, deceased, and Mary E. Gibbins, for the cancellation of a mortgage. From an order denying a motion by said Lowry for permission to come in and serve an answer after the cause had been tried, he appeals. Affirmed.

Argued before DYKMAN and PRATT, JJ.

Alex. Thain, for appellant.

A. P. & W. Man, for respondents.

DYKMAN, J.    This is an appeal by the defendant James L. Lowry, sole executor of Austin Gibbins, deceased, from an order of the special term denying a motion made by him for permission to come in and serve an answer to the complaint after the cause has been tried.    The case was tried at special term, and Mr. Lowry appeared as a witness for the defendant Campbell to support his ownership of the mortgage in question, and it is to be gathered from his affidavit that he had some intimation that the decision would be in favor of the plaintiffs.    Thereupon he conceived the idea that he was the owner of the mortgage as executor of Austin Gibbins, deceased, and now desires permission to set up that fact, and submit the plaintiff to another ordeal.    He says in his affidavit, among other things :

"I was made a party defendant, the plaintiff alleging that I made claim to said mortgage, or had some interest therein, as executor of Austin Gibbins, deceased. Until yesterday, April 21, 1892, at about four o'clock, I supposed that James P. Campbell was the legal owner and holder of said mortgage by virtue of an assignment thereof from the mortgagee, Mary E. Gibbins, to him.    But I believed at all times that such mortgage was held by some secret and undisclosed trust for Austin Gibbins, deceased, by Mary E. Gibbins; but, as I had no means of proving that fact, I interposed no answer in this action, but left the matter to be settled by the court in the controversy between the plaintiffs Campbell and Mary E. Gibbins.    One reason for thinking that such secret trust existed was the direction in the will of Austin Gibbins, deceased, directing that such mortgage be surrendered to the plaintiff Austin P. Gibbins, and satisfied and canceled of record, while I knew the fact to be that at the time said will was made the record showed that said mortgage was held by said Mary E. Gibbins."

Pausing here for a moment, we observe that until April 21, 1892, just five days after the trial judge's refusal of the requests of the defendant Campbell to find in his favor, Lowry says he supposed Campbell owned the mortgage.    How his understanding was enlightened then, he does not state.    He does say, however, that he believed at all times that the mortgage was held by some secret trust for Austin Gibbins, deceased, by Mary E. Gibbins.    How he could believe the last statement, if he believed the first, we cannot understand.    In fact the statements are irreconcilable.    Again, he says he interposed no answer because he had no means of proving the existence of the secret trust ; but the reason assigned is unsatisfactory, for he knew all the parties who possessed any information on the subject.    Then he says he employed an independent lawyer, who discovered that Mary E. Gibbins, the mortgagee, on the same day the mortgage was made, assigned the same to her father, Austin Gibbins, and that another assignment was made, the same as the first, except that it recited the date of record of the mortgage.    He says, further, that the estate of Austin Gibbins, deceased, is insolvent, and finally says the cause was tried upon the theory that Mary E. Gibbins or James P. Campbell owned the mortgage, but that the plaintiffs were entitled to have it surrendered, and then makes the following statement, which seems to have inspired his action :

"I understand that Judge Barnard has intimated that the relief asked for by the plaintiff should be granted, and that the settlement of the findings in such case are pending before him, and that no judgment to that effect has been entered."

His lawyer made an affidavit which showed that he had no difficulty in obtaining information.    The affidavit of Mr. Lowry was met by a

counter affidavit of the plaintiff Austin P. Gibbins, in which he states that it was not true that his father was insolvent in 1885 ; that he was at that time connected with him in business, and lived at home in his house, and was thoroughly well acquainted with all his affairs ; and that he was worth $150,000, at least, at the time he paid for the land covered by the mortgage in litigation. He further says that it was not true that Lowry only discovered since the trial of the action that the mortgage in question had been assigned by his sister to his father ; that he told him so himself in the year 1890,—his father having died in January of that year,—when he was talking to him about having the mortgage canceled as directed by the will, and that in the course of the conversation respecting the assignment, and in answer to him, Lowry said that he knew of the assignment. He further states that, at the time of making the assignment of the mortgage by his sister to Campbell, she handed him the original bond and mortgage, and the two assignments mentioned in Lowry's affidavit ; that Campbell, the attorney for Lowry, who drew his father's will, was named as one of the executors, and knew all about the assignment from his sister to his father when this action was commenced, and at the time of the trial ; that his sister told him within a year past that she had handed the papers to Campbell, including the assignments. He further says that Lowry knew perfectly well that the mortgage in question had been assigned by his sister to his father, and that he had often talked to him on the subject within the past year, and that he also knew that Campbell held the papers, and explained to him the reason why the assignment to his father was not put on record. That affidavit destroys the material facts upon which the appellant relies to open his default, and it harmonizes with the facts developed upon the trial. He says that he talked with the executor respecting the cancellation of the mortgage upon the record in accordance with the directions in his father's will. The will did direct its satisfaction, and it is quite natural that he should inform the executor that the mortgage had been assigned to his father, because that would enable the executor to satisfy it. Both Campbell and Mary E. Gibbins stated in their answer in this action that the mortgage belonged to Campbell, and it cannot be assumed that they will testify otherwise.

The history of the transaction out of which this mortgage sprung manifests the injustice of the efforts of these defendants for its perpetuation. Austin Gibbins, the father of the plaintiff Austin P. Gibbins, purchased the property in question in October, 1885, and paid for it, and took the conveyance therefor, in the name of his son, Austin P. Gibbins, and it stood in his name until 1889, when he conveyed it to his wife, whom he had married in the mean time. That transaction dissatisfied the father, and he instituted legal proceedings for its nullification, which were settled by the surrender of the son. Thereupon, by the direction of the father, the son and his wife conveyed the premises to the sister, Mary E. Gibbins, on the 16th of September, 1889, and she on the same day conveyed the same to Austin P. Gibbins, and he at the same time executed this bond and mortgage to his sister. There was no consideration for this mortgage moving at that time. It was execut-

ed at the dictation of the father for the protection of the property; he informing the lawyer who drew the papers that he wanted his son, Austin P., to have the property, but he wanted it protected from his debts. Thus it appears that the father gave the property to the son as far back as 1885, and the mortgage never had any vitality, because it was without consideration, and made for prudential purposes, which were well understood. Then the father made his will, in January, 1890, in which he directed the cancellation of the mortgage. There is nothing to show that the father had not sufficient property to pay all his debts in 1885, when he made the gift of the property to his son, and there is proof that he was worth $150,000 at the time of his death. In no view, therefore, could the defense of the executor succeed; and the facts and the equities are so strong in favor of the plaintiffs, and of the judgment which has been rendered, that we think it would be inequitable and unjust to permit further litigation in the case.

The order should be affirmed, with $10 costs and disbursements.